UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Natalie James, *et al.*,

       Plaintiffs,

v.                                                      Case No. 18-13601

Detroit Property Exchange,                   Sean F. Cox
                                                        United States District Court Judge

       Defendants.

_____/

**OPINION & ORDER
ON MOTION TO DEEM RELEASES INVALID**

     This is a putative class action. In a recent Opinion & Order, this Court ordered

Defendants to send a curative notice to putative class members advising that they could cancel

the releases they signed if they wished to do so, and restricted Defendants' future

communications with putative class members, due to inappropriate conduct by Defendants. The

parties now disagree as to how the Court should handle some issues related to the relief granted

by the Court. They have fully briefed the issues and the Court concludes that a hearing is not

necessary. As explained below, this Court shall: 1) decline to address the merits of a new legal

challenge to all releases signed by putative class members, that Plaintiffs' Counsel did not raise

previously, as to do so would be an improper advisory opinion on a legal issue that does not

impact the named Plaintiffs; 2) rule that nothing be done as to release requests received from

putative class members who never actually signed a release; and 3) rule that, as to the handful of

individuals who returned late requests to cancel their releases, that they may file individual

motions requesting that relief if a class action is certified. Finally, as to the individuals who

returned timely forms seeking to cancel their releases, the Court: 1) shall issue an order stating

that those releases are declared invalidated; and 2) shall rule that, given Kelly's conduct and Defendants' failure to raise the issue during the prior proceedings, the Court declines Defendants' request for the Court to order those individuals to repay (or promise to repay) any money or rent credits before invalidating the releases they signed. The Court is, however, willing to consider offsetting payments or rent credits received by putative class members from any future payments, if a class action is ultimately certified.

## BACKGROUND

Plaintiffs filed this putative class action on November 19, 2018, and filed an Amended Complaint on March 7, 2019.

On March 12, 2019, Plaintiffs filed an "Amended Motion To Invalidate Releases, Send Curative Notice And Enjoin Defendants From Communicating With Putative Class Members Regarding Release Of Claims." (ECF No. 28). In that motion, Plaintiffs' Counsel claimed that Defendants had engaged in improper communications with putative class members and asked this Court to invalidate all releases that putative class members have signed and enjoin Defendants from any further communications with class members.

After the parties briefed the issues, this Court scheduled an evidentiary hearing. The Court held that evidentiary hearing over the course of two days. The Court also entertained oral argument from Counsel. After the evidentiary hearing concluded, Defense Counsel advised that Defendants were amenable to some restrictions in their future communications with putative class members, and with sending a curative notice and allowing putative class members who had signed a release the option of canceling it.

The Court had the parties submit supplemental briefs and each side provided a proposed

curative notice.  Plaintiffs' Counsel wanted this Court to invalidate all releases signed by any

putative class member, without their input.  In their supplemental brief, Defendants proposed

certain restrictions on their future communications with putative class members and stipulated to

sending a curative notice and offering putative class members "who have signed a release" the

"option of canceling the release."  (ECF No. 57 at PageID.2666).

On July 11, 2019, this Court issued an "Opinion & Order On Plaintiffs' Amended Motion

To Invalidate Releases."  (ECF No. 66).  The Court granted that motion in part and denied it in

part. This Court explained:

> Fed. R. Civ. P. 23(d) authorizes district courts "to regulate
> communications with potential class members, even before certification."
> Manual for Complex Litigation (Fourth), § 21.12 *Precertification
> Communications with the Proposed Class*; *see also Tolmasoff v. General Motors,
> LLC*, 2016 WL 3548219 (E.D. Mich. 2016) ("It is well established that Federal
> Rule of Civil Procedure 23(d) authorizes a court to enjoin a named party from
> communicating with unnamed potential class members.").
>
> "Because the source of the Court's authority to enjoin abusive
> communications is Rule 23(d) rather than Rule 65 (governing preliminary
> injunctions and restraining orders), a party does not have to establish the four
> preliminary-injunction factors to obtain such an injunction." *Id*. (citing *Kleiner v.
> First Nat. Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir. 1985)).  Nevertheless,
> a district court's discretion to enter such an order "is not unlimited, and indeed is
> bounded by the relevant provisions of the Federal Rules, as well as by the First
> Amendment. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).
>
> Ethics rules restricting communications with individuals represented by
> counsel may apply to restrict a defendant's communications with the named
> plaintiffs.  Manual for Complex Litigation (Fourth), § 21.12 *Precertification
> Communications with the Proposed Class*.  Here, however, Plaintiffs' counsel are
> not asserting that Defendants have engaged in inappropriate communications with
> the named Plaintiffs in this case.  Rather, they allege that Defendants have
> engaged in inappropriate communications with putative class members.
>
> "Defendants and their counsel generally may communicate with potential
> class members in the ordinary course of business, including discussing settlement
> before certification, but may not give false, misleading, or intimidating
> information, conceal material information, or attempt to influence the decision
> about whether to request exclusion from a class certified under Rule 23(b)(3)."
> *Id.; see also Tolmasoff, supra*, at *11 ("Examples of abusive communications are

> those that are false or misleading, contain material omissions, or are coercive or intimidating.").
>
> The moving party must demonstrate that the actual or anticipated communications are or will be abusive in that they threaten the proper functioning of the litigation. *Id.*
>
> The Court concludes that the verbal statements made by Kelly during conversations with putative class members, and the statements made in the Gift Letter that Kelly sent out on behalf of Defendants, are abusive and threaten the proper functioning of this putative class action lawsuit.
>
> The Gift Letter, that was sent to an unknown subset of putative class members, is very misleading and deceptive. First, the document is drafted to look like a check but it is not a check. Rather, it is a written communication designed to entice putative class members to come to Defendants' office so that they could then be asked to sign broad releases of claims, including the claims in this case. The Gift Letter makes no reference to signing any release of claims. Rather, it only asks for the individual's "support" and references the $250.00 payment or rent voucher as a "gift," rather than a payment to be made in exchange for a release of claims.
>
> Moreover, at least some of the in-person, involved inappropriate or misleading statements made on behalf of Defendants by Kelly.
>
> Given that the Court finds that those written and verbal communications were improper and misleading, the Court must determine what is the appropriate relief.

(*Id*. at 19-22). This Court then considered what relief should be ordered under the circumstances presented.

The Court concluded that all putative class members should receive a curative notice and be given the opportunity to invalidate the releases they signed. (*Id.* at 22). The Court noted that, based on the evidence presented at the evidentiary hearing, one putative class member who signed a release wishes to invalidate it, while other putative class members "testified that they do not wish to invalidate the Releases they signed." (*Id.* at 23). For example, putative class members Dwight Dobbins and Allen Yancy testified at the evidentiary hearing and "expressed that they are not interested in joining a class action and testified that they do not wish to invalidate the Releases they executed." (*Id*. at 16).

4

This Court expressly declined to invalidate all of the releases that had been signed by putative class members, as Plaintiffs' Counsel had requested. (*Id*. at 23) ("The Court agrees with Defendants that it would be inappropriate for the Court to presumptively invalidate all Releases. The Releases signed by putative class members may be in the best interests of individuals who signed them, depending on their circumstances, and the Court will not issue any kind of blanket order invalidating Releases.")

In connection with the motion, each party submitted a proposed curative notice to be sent to the putative class members. This Court ultimately used Defendants' proposed curative notice, with two very minor changes (eg., a paragraph was bolded). (*Id*. at 24). That curative notice advised the putative class members, in pertinent part, that:

> **If you have signed a release of claims, you have the right to cancel that release. You may cancel the release by filling out the form below and either: (1) mailing it to Detroit Property Exchange; or (2) dropping it off in person at the Detroit Property Exchange office. You have 30 days from the date of this letter / Notice to cancel the release. If you have not signed a release of claims, you do not need to do anything.**

(Ex. 1 to ECF No. 66) (bolding in original).

The Court granted the motion in part, and denied it in part, and ultimately ordered, in pertinent part, as follows:

1) No later than July 17, 2019, Defendants shall file with the Court a list of all putative class members in this case;

2) No later than July 24, 2019, Defense Counsel shall mail each of those putative class members with a copy of the curative notice attached to this Opinion & Order as Exhibit 1, and file an affidavit with the Court indicating that has been done;

3) Defendant Michael Kelly and all of Defendants' employees are hereby ENJOINED from any written or verbal communication with putative class members about releases of claims or this case. Michael Kelly and

> Defendants' employees shall refer any inquiries from putative class members about this case to Defendants' counsel of record in this case;

4) Defendants' counsel of record in this case may communicate in writing with putative class members, provided that copies of those writings are filed with the Court within seventy-two (72) hours of being sent;

5) Defendants' counsel of record in this case may hold in-person meetings with putative class members, provided that: a) those meetings take place at counsel's office (not at Defendants' offices); and b) such meetings are recorded and a copy of the audio recordings are provided to Plaintiffs' counsel within seventy-two (72) hours of the meetings. Michael Kelly shall not attend any in-person meetings with putative class members about this case; and

6) No later than September 2, 2019, Defendants shall file a list of any putative class members who returned the Curative Notice to Defendants, indicating they wished to invalidate the Releases they signed.

(*Id.* at 26-28).

During the course of the motion, including extensive briefing, two days of an evidentiary hearing, oral argument, and supplemental briefs filed after the hearing, Defendants never asserted that a putative class member who elects to cancel his or her release should be ordered to return any money or rent credits received from Defendants. Thus, the curative notices sent to the putative class members did not state that any money or rent credits that had been received from Defendants would have to be returned if a putative class member elected to cancel his or her release.

On August 30, 2019, Defense Counsel filed a "List of Putative Class Members Who Returned Curative Notice Indicating They Wished To Have Their Releases Invalidated." (ECF No. 78). In it – for the first time – Defendants asserted that any persons who wish to have their releases invalidated must return (or agree to repay) money or rent credits received from Defendants:

6

[B]efore this Court moves forward with an order to invalidate any releases, the Court must rule on the issue of whether the putative class members who wish to have their Releases invalidated must pay back or at least agree to pay back the consideration paid by the Defendants in exchange for the Releases. The parties dispute whether these putative class members must return the money and/or rental credits paid by Defendants. The Defendants believe the money must be paid back, or an agreement to pay the money back must be executed, before any Release may be invalidated.

(*Id.* at 1-2).

In that same filing, Defense Counsel also stated that: 1) 24 putative class members timely delivered a signed form directly to Detroit Property Exchange; 2) Defense Counsel received signed forms from 14 other putative class members within the 30-day window, but the forms were sent from Plaintiffs' Counsel to Defense Counsel (not Detroit Property Exchange); 3) Defense Counsel received, via email, a signed form by one putative class member past the August 23, 2019 deadline; and 4) eleven other putative class members returned signed forms, but had never signed a Release with Defendants.

On October 2, 2019, Plaintiff's Counsel filed a notice stating that since "Defendants August 30 filing, Plaintiffs have received two additional requests to invalidate by: 1) Ms. Ebony White (signed 9/3/19, and she also indicated to Plaintiffs' counsel that she never received Defendants' initial mailing), and Yolandita Vega and Jorge Belarob Cuenco (signed 9/9/19 on the same form). Plaintiffs request that the Court honor these person's requests to invalidate the releases in this case." (ECF No. 79).

This Court held a Status Conference on October 3, 2019. During that conference, the Court urged counsel to meet and confer to discuss these issues.

On October 4, 2019, a Stipulated Order was issued that stated, in pertinent part, that by November 6, 2019, Plaintiffs' Counsel would file "a motion to deem invalidation requests

effective."  (ECF No. 80).

On November 6th, Plaintiffs' Counsel filed a "Motion To Deem Releases Invalid."  (ECF No. 84).  Defendants oppose the motion.

## ANALYSIS

I.      **Should This Court Now Declare That All Releases Signed By Putative Class Members Are Invalid As A Matter Of Law, Pursuant To 15 U.S.C. § 1639c(e)(3)?**

Although the parties had stipulated to Plaintiffs filing "a motion to deem invalidation requests effective" (ECF No. 80), and this Court had already denied Plaintiffs' Counsel's request to declare all releases signed by putative class members invalid, the pending motion goes beyond asking the Court to deem invalidation requests effective.  Plaintiffs' Counsel now asks this Court to affirmatively rule that, pursuant to 15 U.S.C. § 1639c(e)(3), all releases signed by putative class members are invalid as a matter of law.  (Pls.' Br. at 6).

In opposing this request, Defense Counsel asserts that this "argument was available and should have been made" during the course of the Court's consideration of Plaintiffs' motion and, therefore, "it is too late" now.  (Defs.' Br. at 2 & 3).  This Court's consideration of Plaintiffs' motion involved extensive briefing, oral argument, an evidentiary hearing, and supplemental briefs.  Defendants contend there is no reason why this argument was not made during the prior proceedings.  (*Id*. at 5).

While Defense Counsel's objection is valid, the Court concludes that this new request must be denied, without any need to reach the merits of the legal issue, for a more fundamental reason – this Court lacks the authority to make the requested ruling.  At this juncture, this is only a putative class action. Thus, Plaintiffs' Counsel only represent the named Plaintiffs in this case. None of the named Plaintiffs executed a release with Defendants and, therefore, none of them

have standing to seek a declaration from this Court that releases are invalid as a matter of law under the statute. And this Court may not provide advisory rulings.

Moreover, two of the absent putative class members actually testified at the evidentiary hearing before this Court that they do not want the declaratory relief that Plaintiffs' Counsel is now seeking. Dwight Dobbins and Allen Yancy appeared and "expressed that they are not interested in joining a class action and testified that they do not wish to invalidate the Releases they executed." (ECF No. 66 at 16).

In addition, because no class action has been certified, this Court cannot make a ruling as to this legal issue that would bind the absent putative class members. The Sixth Circuit recently addressed this concept in *Faber v. Ciox Health, LLC*, __ F.3d __, 2019 WL 6596501 (6th Cir. 2019) (only named plaintiffs are bound by a district court's rulings on legal issues that are made prior to both class certification and notice to the class).

## II.    What Should The Court Do About: 1) Several Individuals Who Returned Forms But Never Signed A Release; And 2) A Few Individuals Who Returned Their Forms A Few Days Late?

Defendants' August 30, 2019 filing states that eleven individuals who had not signed releases submitted forms stating they wished to invalidate their releases. There can be no dispute that this Court need not "invalidate" releases by those individuals because they never signed releases.

Defendants' August 30th filing also states that Defense Counsel received, via email, a signed form by one putative class member past the August 23, 2019 deadline (Joenill Readus). In addition, in their October 2nd filing, Plaintiffs' Counsel stated that since "Defendants August 30 filing, Plaintiffs have received two additional requests to invalidate by: 1) Ms. Ebony White

(signed 9/3/19, and she also indicated to Plaintiffs' counsel that she never received Defendants' initial mailing), and Yolandita Vega and Jorge Belarob Cuenco (signed 9/9/19 on the same form). Plaintiffs request that the Court honor these person's requests to invalidate the releases in this case." (ECF No. 79).

Defendants, on the other hand, do not want the Court to honor these requests to invalidate.

Having considered the issue, this Court rules that, if this case is certified as a class action, then the Court will allow these individuals to file individual motions seeking to invalidate the releases they signed, based upon their verbal and written communications with Defendants and the circumstances surrounding them.

### III. As To The Individuals Who Returned Timely Forms, Should The Court Now Address Defendants' Belated Argument That The Court Must Order Them To Repay Funds Or Promise To Do So?

It is undisputed that 38 putative class members returned timely forms stating that they want to cancel the releases they signed. As to these individuals, there appears to be no dispute that the Court should invalidate those releases, so that those individuals are not barred from joining this case if they elect to do so.

But Defendants are now taking the position that this Court should order these absent putative class members to either return the money or rent credits they received from Defendants, or promise to do so. Each putative class member that signed a release was in a different situation and they signed releases at different times. Some received checks, with differing amounts, while

other received "rent credits."[1]  Defendants are now arguing that the Court should order the putative class members who submitted timely requests to "tender back the consideration paid for the releases before being granted invalidation of their signed releases."  (*See* Defs.' Br., ECF No. 88, at PageID.4204).

Plaintiffs' Counsel oppose this request and offer several legal theories as to why the Court should not do that.  Plaintiffs' arguments include that: 1) the tender back rule cited by Defendants does not apply under the circumstances presented here; 2) the putative class members can also avoid the tender back rule because there was fraud in the execution of the releases; and 3) Defendants are estopped from claiming that the money received by putative class members is anything but "a gift," as Kelly characterized it.  Plaintiffs contend that the Court should invalidate the releases without ordering these putative class members to return the money or rent credits.  Alternatively, they argue that the Court should wait until after class certification has been decided before ruling as to whether the money/rent credits must be returned.

Defendants oppose these legal arguments.  As to Plaintiffs' argument that the tender back rule does not apply because there was fraud in the inducement, Defendants' brief asserts that Plaintiffs would have show *sufficient evidence* as to that and claims Plaintiffs have failed to do so in their motion and brief.  (*See* Defs.' Br. at 19-20).  At this juncture, however, Plaintiffs' Counsel do not represent these absent putative class members so they can hardly be expected to present sufficient evidence as to whether there was fraud in the inducement as to those

---

[1]For example, the transcript of Kelly's conversation with Mr. Cobb reflects that he offered Cobb either a $100.00 check or a rent credit of $150.00.

individuals.

Moreover, Defendants could have raised this issue during the extensive prior proceedings but chose not to do so. Defendants agreed to allowing putative class members who signed releases to cancel those releases and never argued that this Court should order those absent class members to repay money or rent credits (or promise to do so). This Court then used Defendants' own proposed curative notice – that made no mention of the putative class members having to pay back (or agree to pay back) money or rent credits in order to cancel their releases.

As such, the Court shall rule that the releases signed by these 38 absent class members are "hereby INVALIDATED." Given Kelly's conduct and Defendants' failure to raise this issue during the prior proceedings, and all of the facts and circumstances presented, the Court declines Defendants' request for the Court to order those 38 individuals to repay (or promise to repay) any money or rent credits before invalidating the releases they signed. The Court is, however, willing to consider offsetting payments or rent credits received from any future payments to class members, if any, that may result from this lawsuit. Any individualized arguments concerning fraud or other issues could be considered at that time, if necessary.

## CONCLUSION & ORDER

Plaintiffs' Motion to Deem Releases Invalid is GRANTED IN PART AND DENIED IN PART.

As explained above, the Court: 1) declines to address the merits of the new legal challenge to all releases signed by putative class members that is set forth in Plaintiffs' motion; and 2) rules that, as to the handful of individuals who returned late requests to cancel their releases, they may file individual motions requesting that relief if a class action is certified in this

case.

As to the following 38 individuals, the Court RULES that the releases they signed are

HEREBY INVALIDATED:

    1) Angela Chevis;
    2) Arnold Goins;
    3) Phelisha Thompson;
    4) Tiffany Henley;
    5) Ray Randall, Jr.;
    6) Tonya Hyler;
    7) Sandra Thompson;
    8) Tiarre Jackson;
    9) Christopher McArdory;
    10) Terrell Chestnut;
    11) Domonique Bell;
    12) Donald Swinney;
    13) Evelyn Steele;
    14) Johnnie Ray Bragg, Jr.;
    15) Natasha Duffey;
    16) Nicole Parker-Jones;
    17) Nuhshaummie Pruitt;
    18) Ramone Jones;
    19) Steven Kirk;
    20) Terrance Jones;
    21) Wesley Fountain;
    22) Van Hempill;
    23) Ieshaie Jeanette Houston;
    24) Candice Goins;
    25) Chrystal Goins;
    26) David Swinney;
    27) John Campbell;
    28) Jevon Warren;
    29) Jasmyn Jones;
    30) Keidronn Sanders;
    31) Katresa Rolfe;
    32) Marquitta Tolbert;
    33) Michael Taylor;
    34) Olga Santiago;
    35) Robert James
    36) Sabrina Benson;
    37) Tameika Bailey; and
    38) Maurice Walker.

The Court declines Defendants' request for the Court to order these individuals to repay (or promise to repay) any money or rent credits at this time. The Court is, however, willing to consider offsetting payments or rent credits received from any future payments to class members, if any, that may result from this lawsuit. Any individualized arguments concerning fraud or other issues could be considered at that time, if necessary.

IT IS SO ORDERED.

s/Sean F. Cox
Dated: April 3, 2020
Sean F. Cox
United States District Court Judge