UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Natalie James, *et al.*,

      Plaintiffs,

v.                             Civil Case No. 18-13601

Detroit Property Exchange, *et al.*,     Sean F. Cox
                                    United States District Court Judge

      Defendants.

_____/

**OPINION & ORDER**
**DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This contentious putative class action is currently before the Court on cross-motions for

summary judgment.  These are somewhat unusual motions in that they were filed *before*

Plaintiffs have filed a motion seeking class certification and filed *before* discovery has been

completed.  Because they are cross-motions, the parties have extensively briefed the issues.  Oral

argument was heard on  July 30, 2020.

Plaintiffs' motion does not ask the Court to grant summary judgment in their favor, even

as to just liability, as to any of the ten counts in the operative complaint.  Rather, Plaintiffs ask

the Court to make two legal rulings that they believe will impact their claims: 1) that the

transactions at issue in this case are "'residential mortgage transactions' within the meaning of

15 U.S.C. § 1602(x)" (because they are either installment sales agreements that give rise to a

purchase money security interest or are "credit sales" under 15 U.S.C. 1602(h)); and 2) whether

multiple individuals or entities may be treated as a single creditor for purposes of TILA/HOEPA.

Defendants' motion is titled "Summary Judgment" (as opposed to partial summary

judgment) but it does not make any arguments seeking dismissal of the counts asserted against

the two individual Defendants (Michael Kelly and Cristian Segura).  Rather, it seeks dismissal

of claims asserted against the "Entity Defendants" and asks the Court to rule that: 1) the Entity

Defendants cannot be held liable under TILA or HOEPA because they are not "creditors" under

those Acts; and 2) rent-to-own agreements and land contracts are not regulated by TILA or

HOEPA, as shown by the fact that there are legislative efforts that would regulate such

agreements.

For the reasons explained below, the Court shall deny without prejudice the first issue

raised in Defendants' motion, and the second issue raised in Plaintiffs' motion, because the

Entity Defendants may be creditors under the Acts by virtue of engaging in "credit sales," but at

this juncture, Plaintiffs cannot address the issue of whether the Entity Defendants "regularly"

engage in such transactions.  And Plaintiffs' request for the Court to rule that Plaintiffs can meet

that requirement under their alternative veil-piercing theory is premature given that they may be

able to make the required showing once discovery is completed.

As to the first request in Plaintiffs' motion, whether the Court should rule that the

transactions at issue are "residential mortgage transactions," the Court shall deny that request

without prejudice as well.  Notably, neither party has adequately explained how such a ruling

would impact the ten counts of the operative complaint in this case.

Finally, as to Defendants' argument that residential rent to own agreements are not

covered under the Acts because there are efforts to pass specific legislation to regulate such

agreements, the Court rejects that argument because the fact that there is specific legislation

being proposed to regulate these agreements does not necessarily mean that they are not covered

under these existing Acts.

**BACKGROUND**

2

**A.**     **Procedural Background**

Acting through counsel, three individuals filed this putative class action as named

plaintiffs, asserting claims against five named Defendants, on November 19, 2018.

The action is in federal court based upon federal-question jurisdiction.  This Court

declined to exercise supplemental jurisdiction over any state-law claims.  (*See* ECF No. 85).

At this juncture, the Second Amended Class Action Complaint (ECF No. 90) is the

operative complaint in this case.  It was filed on December 9, 2019.  It includes the following

eight named Plaintiffs: 1) Natalie James; 2) Jerome Day; 3) Carl Austin, 4) Veronica Sherrell; 5)

Andre Mack; 6) Eric Ingram; 7) Shanon Cobb; and 8) Jazmine Cobb.  It asserts claims against

Defendant Detroit Property Exchange ("DPE"), its owner Michael Kelly, another individual

named Crystian Segura, and a litany of entities that Kelly owns or controls, along with "John

Doe Entities 1-20).   The Second Amended Class Action Complaint includes the following ten

counts:

> 1)     "Violation of the HOEPA (Mandatory Disclosures), 15 U.S.C. § 1639(a),
>         12 C.F.R. § 1026.32(c) (as to all Entity Defendants)" (Count I);
>
> 2)     "Violation of the TILA and HOEPA (Ability to Repay), 15 U.S.C. §
>         1639(h), 12 C.F.R. § 1026.43(c) (As to all Entity Defendants)" (Count II);
>
> 3)     "Violation of the HOEPA (Pre-Loan Counseling), 15 U.S.C. § 1639(u), 12
>         C.F.R. § 1026.34(a)(5) (As to all Entity Defendants) (Count III);
>
> 4)     "Violation of the TILA (Loan Origination", 15 U.S.C. § 1639b (As to
>         Defendant Crystian Segura and Defendant Michael Kelly)" (Count IV);
>
> 5)     "Violation of TILA (Loan Origination", 15 U.S.C. § 1639b (As to all
>         Entity Defendants)" (Count V);
>
> 6)     "Violation of HOEPA, 15 U.S.C. § 1639(k) (As to all Entity Defendants)"
>         (Count VI);

3

7)    "Violation of 15 U.S.C. 1639r and 12 CFR § 1026.34(b) (As to all entity Defendants)" (Count VII);

8)    "Violation of 15 U.S.C. § 1639h (as to all Entity Defendants)" (Count VIII);

9)    "Piercing the Corporate Veil (to impose liability upon Michael Kelly for the actions of all Defendants Entities") (Count IX); and

10)    "Declaratory Judgment (As to all Defendants)" (Count X).

Plaintiffs' Second Amended Class Action Complaint asks the Court to certify a class defined as follows:

A Class of persons who sought to purchase real property from any of the Defendants at any time from November 19, 2015 through final judgment, and who have signed:

(a) any document or documents that Defendants characterize as a "Rent to Own" transaction, OR

(b) two or more of the following documents drafted by or on behalf of Defendants: "lease," "option to purchase," "real estate purchase agreement," OR

(c) a document with the title "Land Contract."

(*Id*. at ¶ 22).

Plaintiffs have not yet filed a motion seeking class certification. Counsel for the parties believed that the best way to proceed in this case was for them to stay further discovery and file cross-motions for summary judgment to address discrete legal issues pertaining to Plaintiffs claims. (*See* ECF No. 101).

The parties have since filed those cross-motions for summary judgment. A zoom hearing was held on July 30, 2020.

**B.    Factual Background**

4

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Plaintiffs' motion includes a "Statement of Material Facts Not In Dispute" ("Pls.' Stmt. A") and Defendants' response brief includes a "Counter-Statement of Disputed Facts" ("Defs.' Stmt. A").  In addition, along with Defendants' motion it submitted a "Statement of Material Facts Not In Dispute" ("Defs.' Stmt. B") and in response, Plaintiffs submitted a "Counter-Statement Of Disputed Facts" ("Pls.' Stmt. B").

The relevant evidence submitted by the parties is set forth below.  Unless stated otherwise, these facts are undisputed.

The eight named Plaintiffs in this case are individuals who currently reside (or who at all relevant times did reside) in single family homes they sought to purchase from Defendants in

5

Detroit, Michigan.  (Stmts. A at ¶ 1).

Defendant Michael Kelly is the sole owner of Defendant Detroit Property Exchange Company.  Detroit Property Exchange Company is the sole owner of the remaining entities that are named as Defendants in this case.  (Stmts. A at ¶¶ 2-3).  "Together, [those] Defendant entities and all other entities owned by Detroit Property Exchange Company constitute 'Detroit Property Exchange.'" (Stmts. A at ¶ 4).  Detroit Property Exchange specializes in homeownership.  Most of Detroit Property Exchange's clientele want to purchase a home and some want to lease a home.  (Stmts. A at ¶¶ 5-6).

From the time frame of 2015 to the present, Detroit Property Exchange primarily engages in the sale of homes to individuals through what it refers to as "rent to own" transactions. (Stmts. A at ¶ 7).  Defendants admit that "rent to own" (RTO) is synonymous with "lease with option to purchase" ("LWO").  (*Id.* at ¶ 8).

"Defendants' so-called 'rent to own' transactions are the transactions at issue in this case."  (Stmts. A at ¶ 10).  The named Plaintiffs executed what Defendants refer to as a "rent to own" agreement or a "lease with an option to purchase."  (Stmts. A at ¶ 11).  The agreements at issue in this case are similar but not identical.

For example, named Plaintiffs Natalie James and Jerome Day entered into a written "Residential Lease With Option Agreement" with Defendant Homes of Detroit, LLC.  (ECF No. 107-2).  Under that agreement, James and Day agreed to rent a residential property on Three Mile Drive in Detroit, Michigan.  The term of the agreement was stated as 93 months and the monthly payment is $550.00.  (*Id.* at ¶ 1 &  3) ("The term of this agreement shall be for 93 months beginning on 6/1/2016 and ending on 12/1/2023.").  It contains the following paragraph:

> 13.  Vacation or Abandonment of the Property.  *If Tenant moves from the Property, Landlord may immediately enter and take possession of the Property. Further, all lease payments for the remainder of the term of the Agreement shall immediately become due.*

(*Id*. at ¶ 13) (emphasis added).  The agreement further provides:

> 29.  Complete Agreement.  This lease, in conjunction with the Option to Purchase Agreement between the parties, constitutes the entire agreement between the parties.  There are no verbal or written agreements between the parties that are to be considered a part of this lease unless they have been enumerated herein. Except as otherwise set forth herein, this lease may be amended solely by a written instrument, signed by all parties.

> 30.  Modification.  Landlord and Tenant acknowledge that the terms of this Agreement cannot be modified orally, but can be modified only by an instrument in writing signed by all parties.

(*Id*. at ¶¶ 29-30).

James and Day also executed a written "Option to Purchase Agreement" with Homes of Detroit, LLC.  (ECF No. 107-2).  That agreement states that James/Day and Homes of Detroit, LLC agree that James and Day have "the option to purchase" the property on Three Mile Drive "for the price of $25,900.00 at 10% interest rate with a monthly amount of $550.00 and Home Reserve account in the amount of $150.00.  The parties have signed a lease for the Property on the same date, the terms of which are hereby incorporated by reference."  (*Id*. at 10).  It then states various terms and conditions that must be met before the tenants can exercise the option to purchase.

James and Day also executed a written "Real Estate Purchase Agreement" with Homes of Detroit, LLC.  (ECF No. 107-2).  That agreement states that James and Day "hereby offers and agree to purchase" the property on Three Mile Drive for the sum of $25,900.00 as the sale amount being offered upon the following conditions" and then includes numerous paragraphs.

7

## STANDARD OF DECISION

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and provides, in pertinent part that:

> (a) Motion for Summary Judgment or Partial Summary Judgment.  A party may move for summary judgment, **identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.**  The court shall grant summary judgment if the movant shoes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (emphasis added).

Here, the Court is presented with cross-motions for summary judgment.  That both parties in this case have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).  In reviewing these motions, this Court "must be careful to 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 754-55 (6th Cir. 2015) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

Here, the named Plaintiffs assert ten separate counts in the operative complaint (ie., the Second Amended Class Action Complaint).

The named Plaintiffs have filed a Motion for "Partial Summary Judgment."  (ECF No. 107).  Without addressing their claims on a count-by-count basis, Plaintiffs appear to ask the Court to make over-arching rulings that: 1) that the "transactions at issue" are "residential mortgage transactions" under the TILA and HOEPA; and 2) that multiple entities may be treated as a single "creditor," under these acts under a veil-piercing theory.

8

Defendants filed a summary judgment motion that also does not address the claims on a count-by-count basis.  They ask the Court to enter an order ruling that: 1) the Entity Defendants are not 'creditors' who may be subject to civil liability; and 2) the underlying transactions are not regulated by the TILA and HOEPA as shown by the fact that there is legislation being proposed that would regulate residential rent to own agreements.

Notably, these cross-motions for summary judgment come before the Court under an unusual procedural posture.

First, these cross-motions were filed before a motion for class certification has been filed or decided by this Court.  As such, even if Defendants obtained a summary judgment ruling in their favor,  that ruling would only bind the eight named Plaintiffs.  *See Faber v. Ciox Health, LLC*, 944 F.3d 593, 602-03 (6th Cir. 2019).  Such rulings would not bind any putative class members.  Yet both defense counsel and Plaintiffs' counsel makes numerous references and arguments, throughout their briefs, about the claims of putative class members.

Second, while the parties have engaged in some discovery in this case, discovery has not been completed.  So, for example, Plaintiffs claim that they do not have information or transaction documents for putative class members, which would show how many transactions the various Entity Defendants have had during the relevant years.  (*See* ECF No. 107 at 19).

Third, these are unusual summary judgment motions in that they appear to be "preliminary" summary judgment motions, with the parties anticipating they may file another round of summary judgment motions at a later date.  The named Plaintiffs are not, for example, seeking a summary judgment ruling as to liability or damages as to any of the ten counts. Rather, they are seeking over-arching legal rulings that they believe would impact their claims

going forward.  Defendants also appear to envision filing a future motion if this one does not result in the case being dismissed.  (*See* ECF No. 113-2 at 7) (Indicating if issues are not resolved in their favor, then fact issues will need to "be ruled upon through another motion for summary judgment.").

## ANALYSIS

The federal claims in this case (the only claims this Court is exercising jurisdiction over) are asserted under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA") and the Home Ownership Equity Protection Act of 1994, 15 U.S.C. § 1639 *et seq*. ("HOEPA"), which is part of TILA.[1]

Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see also Baker v. Sunny Chevrolet*, 349 F.3d 862, 864 (6th Cir. 2003).  The Sixth Circuit has "held that the statute must be considered liberally in the consumer's favor."  *Id.*   TILA's  provisions are implemented by Title 12 of the Code of Federal Regulations Part 226 known as "Regulation Z."  *Id.*

I.     **Defendants' Argument That The Entity Defendants Are Not "Creditors" And Therefore Cannot Be Held Liable Under The Acts**

---

[1]*Mills v. EquiCredit Corp*., 172 F. App'x 652, 653 (6th Cir. 2006).

Defendants' motion asserts that the "Entity Defendants"[2] cannot be found civilly liable because TILA and HOEPA's civil liability section does not apply because "the Entity Defendants" are not "creditors."  (ECF No. 106 at iii & 7).  They argue that Plaintiffs' lawsuit suffers from a fatal flaw in that the Entity Defendants are not "creditors" "under the TILA and HOEPA, and being a 'creditor' is a requirement for the imposition of any civil liability.  *See* 15 U.S.C. 1640(a).  Specifically, the statute provides: '[A]ny creditor who fails to comply with any requirement imposed under [the relevant sections] with respect to any person is liable to such person' in the amounts described in 15 U.S.C. 1640(a)(1-4) (emphasis added)."  (*Id*. at 7).

"To be a 'creditor,' one must 'regularly extend[ ] consumer credit.'  12 C.F.R. 1026.2(a)(17).  Reg Z provides: 'Credit means the right to defer payment of debt or to incur debt and defer its payment.' 12 C.F.R. 1026.2(a)(14).  (*Id*. at 9).

Defendants make a variety of arguments as to why they should not be considered to have extended credit to Plaintiffs.

### A.    Consumer Credit

But Defendants do not appear to dispute that "credit sales" are regulated by the TILA and HOEPA.  (Defs.' Resp. Br., ECF No. 113, at 17-18).  Nevertheless, Defendants assert that their agreements with Plaintiffs are not "credit sales" pursuant to 15 U.S.C. § 1602(h) because the agreements are "terminable without penalty at any time."[3]  (ECF No. 113 at iv & 9-10).

15 U.S.C. § 1602 provides definitions and rules of construction regarding numerous

---

[2]Again, the "Entity Defendants" are all of the named Defendants in this case except for the two individuals Defendants, Kelly and Segura.  (ECF No. 106 at 7 n.8).  Defendants' motion does not challenge the counts against those individual Defendants.

[3]Defendants' motion does not challenge other requirements.

terms and defines the term "credit sale" as follows:

> (h)  The term "credit sale" refers to any sale in which the seller is a creditor.  The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract."

15 U.S.C. § 1602(h).

Defendants note that the "question of whether a transaction constitutes a 'credit sale' under the TILA and HOEPA is decided by applying the facts to Reg Z's definition of 'credit sale," under 12 C.F.R. § 1026.2(a)(16).  (ECF No. 113 at 10).  That definition is as follows:

> (16) Credit sale means a sale in which the seller is a creditor.  The term includes a bailment or lease *(unless terminable without penalty at any time by the consumer)* under which the consumer:
>
> > (I) Agrees to pay as compensation for use a sum substantially equivalent to, or in excess of, the total value of the property and service involved; and
>
> > (ii) Will become (or has the option to become), for no additional consideration or for nominal consideration, the owner of the property upon compliance with the agreement.

12 C.F.R. § 1026.2(a)(16) (emphasis added).

Defendants state that Reg Z's controlling definition is critical in terms of this case because it contains an exception for leases that are "terminable without penalty at any time by the consumer." Defendants contend that the "terminable without penalty at any time" exception applies to their agreements with the named Plaintiffs and, therefore, they are not "credit sales." (Defs.' Resp. Br. at 12).  Defendants rely on *In re Hanley*, 135 B.R. 311, 313 (C.D. Ill. 1990).

In support of their argument that their agreements are "terminable without penalty," Defendants argue:

12

> Under Plaintiffs' Residential Lease with Option to Purchase Agreements (aka rent-to-own agreements), there is no "penalty" for terminating the agreement early. The Plaintiffs and putative class members simply live in the property as tenants until they choose to stop paying rent . . .
>
> *There is no "penalty" for terminating the agreement and simply moving out. There is no contractual provision requiring the Plaintiffs to pay every month's rent for the duration of the term.* There is no contractual provision requiring Plaintiffs to purchase the property. There is no acceleration clause in the contract that states, if a default or termination occurs, the entirety of the purchase price is due. None of that exists here . . . .

(Defs.' Resp. Br. at 13) (emphasis added); (*see also* Defs.' Br. at 3) (stating if a tenant desires, he or she can simply stop paying rent and move out of the property and the agreement will be terminated).

Defendants' position is that it is Plaintiffs' choice to simply live in the property as tenants so long as they desire to do so – that they can "leave the keys on the counter and move out," in which case the lease would be terminated and they would "only be on the hook" for unpaid rent until the time they terminated the agreement. (7/30/20 Hrg. Tr.; Defs.' Br. at 16). Defendants contend that, when that happens, "Defendants only seek to evict" the tenant and do not seek a money judgment on any remaining amounts owed. (*Id.*) Defendants state that if they "sought and obtained money judgments for the amounts remaining on the Option's purchase price, that might be considered 'debt.'" (*Id.*). But Defendants claim they do not seek such judgments and claim "there is no right to do so under the Agreements." (*Id.*). Defendants submitted an affidavit from Kelly that states, in pertinent part, that "[t]here is no acceleration clause in any of the relevant agreements and the putative class members can terminate their agreements at any time without any penalty." (ECF No. 113-5 at ¶ 2).

Plaintiffs assert, as one of their alternative positions, that the transactions at issue in this

case are credit sales.  They disagree that the agreements are terminable without a penalty.  (*See* ECF No. 126).  Plaintiffs assert that Defendants' suggestion that the agreements are terminable without penalty because they do not provide for a penalty upon default and Defendants have never attempted to collect a money judgment upon a default lacks merit.  "There is a definite payment obligation here that extends for months and years, and upon breach, they remain liable for damages for breach, as is true for every contract in the State of Michigan."  (*Id*. at 5).  Plaintiffs assert these agreements are not terminable without a penalty and note that "[j]ust because Defendants did not choose to recover damages for breach of contract does not obviate their right to do so.  Defendants' interpretation of the agreements is based upon the actions it has taken, rather than the actions it *could have* taken."  (*Id.*).

Plaintiffs' argument is well-taken.  Consider the agreement signed by James and Day.  It is a contract under which they are obligated to make monthly rental payments during the entire 93-month term of the contract.  There is no contractual provision that allows them to terminate the agreement early if they wish to do so.  Thus, this agreement is readily distinguished by the agreement at issue in *In re Hanley*, that expressly provided the plaintiff renters with "the right to terminate the rental relationship at any time" by returning the goods that were rented under the agreement. *In re Hanley*, 135 B.R. at 313. Indeed, that court noted it was that express "contractual right to terminate" the precluded a finding that the rent-to-own agreements in that case were credit sales.  *Id*. at 313 n1.

Here, the agreements at issue lack a contractual provision giving Plaintiffs the right to terminate the agreement without penalty before the end of stated term of the agreement.  In addition, att least one of them also contains the following contractual provision:

>    13.  Vacation or Abandonment of the Property.  *If Tenant moves from the*
>    *Property, Landlord may immediately enter and take possession of the Property.*
>    *Further, all lease payments for the remainder of the term of the Agreement shall*
>    *immediately become due.*

(*Id.* at ¶ 13) (emphasis added).  This appears to be an acceleration clause.[4]  Thus, contrary to

Defendants' arguments above, at least some of its agreements appear to have an acceleration

clause that could subject a tenant who broke his or her lease (and simply moved out) to liability

for the entire remaining term of the agreement.

    Accordingly, the Court declines to rule, as Defendants request, that the agreements like

the one James and Day entered into are terminable at any time without a penalty and, therefore,

cannot be considered a credit sale.

    **B.  Regularly Extend Credit**

    As both sides recognize, even if the Court determines that the Entity Defendants

extended credit and debt was created in this manner, that is not the end of the inquiry in

determining whether they are "creditors" under the Acts.  In order to be considered a creditor, a

person must "regularly extend" consumer credit.  (*See* ECF No. 106 at 17; ECF No. 107 at 17-

18).

    The parties address the various requirements used to determine if this threshold is met in

their briefs.  (*See* ECF No. 107 at 18-19; ECF No. 106 at 17-18).

    While the parties have engaged in some discovery in this case, discovery has notably not

been completed.  As such, Plaintiffs do not have information or transaction documents for

---

    [4]Defendants' brief notes an "acceleration clause" is a provision that requires the entire
contract balance to be paid off sooner than the stated due date if some specified event occurs.
(ECF No. 106 at 15 n.16).

putative class members or others, which would show how many transactions the various Entity Defendants have had.  (*See* ECF No. 107 at 19) ("Defendants have to date refused to produce transaction documents for the remaining putative class members; Plaintiffs believe that these withheld documents will show that over one hundred more transactions occurred across 2016 and 2018.").  Without such discovery, Plaintiffs cannot show that any given Entity Defendant has met the requirements such that they are deemed to have regularly extended consumer credit.

Plaintiffs ask the Court to rule that multiple entities or individuals can be treated as a single creditor for purposes of this requirement under TILA/HOEPA.  Plaintiffs note that other courts have found that a TILA/HOEPA plaintiff had pleaded a plausible claim under the Acts where the plaintiff asserted that the defendants are creditors under an alter ego /piercing the veil theory.  (ECF No. 107 at 20) (citing *Ward v. Shad*, 2019 WL 1084219 at *5 (D. Minn. March 7, 2019).

In *Ward*, the district court noted that the plaintiff asserted that the defendants met "the second prong of TILA's definition of creditor by using a veil-piercing theory in a TILA context," and noted that other courts have allowed that:

> While the Eighth Circuit has not decided this issue, other district courts have permitted using the veil–piercing theory in a TILA context. *See, e.g., Arrington v. Colleen Inc.*, No. Civ. AMD 00–191, 2000 WL 34001056, at *6 (D. Md. Aug. 7, 2000) (finding that despite the individual defendants were not the persons "to whom the debt ... was initially payable on the face of the evidence of the indebtedness," plaintiffs pled sufficient facts that defendants were intimately involved in the creation, ownership, and operation of the corporate defendants "so as to foreclose any conclusion at this stage ... that this is not a case justifying ... the piercing [of] the corporate veil"); *Cassese v. Wash. Mut., Inc.*, 711 F.Supp.2d 261, 275 (E.D.N.Y. 2010) (allowing class plaintiffs to assert a TILA claim against a parent–company based on actions of its subsidiary, "regardless of whether [parent–company] was in fact a 'creditor' as defined by TILA."); *see also Longo v. First Nat'l Mortg. Sources*, No. 07-4372 MLC, 2010 WL 415330, at *2–4 (D.N.J. Jan. 29, 2010) (finding that "the plaintiffs have alleged facts sufficient to

16

present a genuine issue of material fact as to whether the corporate veil should be pierced" to hold defendant liable for its subsidiaries' TILA violations); *In re Currency Conversion Fee Antitrust Litig*., 265 F.Supp.2d 385, 423–27 (S.D.N.Y. 2003) (dismissing TILA claims where defendant parent–banks did not directly extend credit and because plaintiffs did not sufficiently plead a corporate veil–piercing theory, making only purely conclusory allegations that the defendants "exercised [ ] dominion and control over its subsidiaries"); *Warburton v. Foxtons, Inc*., No. Civ. A 04-2474 FLW, 2005 WL 1398512, at *8 (D.N.J. June 13, 2005) (providing "a parent is not a creditor ... solely by virtue of ownership of a subsidiary that fits that definition," rather "the corporate veil will be pierced, and a parent company will be held liable, only where a subsidiary functions as an instrumentality or alter ego of the parent, and that the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.") (citations and quotation omitted).

*Id*. at *5.

Here too, Plaintiffs have alleged TILA liability under this same kind of veil-piercing theory.

In the context of these cross- motions, Plaintiffs contend that an "entity-by-entity evaluation need not be undertaken" if this Court finds as a matter of law that Plaintiffs can meet this element under this theory.  At this stage of the litigation (ie, before discovery has been completed), however, there is no need for the Court to make a ruling on this alternative theory.  And given the lack of Sixth Circuit authority on that issue, the Court declines to make such a legal ruling when it may not be necessary.  During discovery, Plaintiffs may learn that some or all of the Entity Defendants[5] meet the requirements at issue on their own.  If, after the close of discovery, Plaintiffs cannot make the required showing as to each Entity Defendant, then the Court can consider this alternative method of satisfying the requirement.

_____

[5] The caption of the operative complaint also lists "John Doe Entities 1-20" as Defendants.    This Court does not know if that was in error, or whether Plaintiffs intend to name additional Defendants in this case.

17

Accordingly, the issue of whether the Entity Defendants may be considered creditors for purposes of TILA/HOEPA by virtue of having engaged in credit sales is not an issue that should be determined at this stage of the litigation.  As such, the Court shall deny Defendants' summary judgment motion without prejudice and also denies without prejudice that portion of Plaintiffs' motion that asks the Court to make rulings on this issue.

## II.   Remaining Issue In Plaintiffs' Motion, Request To Hold That The Transactions At Issue Are "Residential Mortgage Transactions," And Defendants' Response To It

Plaintiffs' motion also asks the Court to rule, as a matter of law, that the Transactions Defendants entered into with their customers are "residential mortgage transactions" within the meaning of 15 U.S.C. § 1602(x).  Plaintiffs make alternative, and shifting, arguments as to how they get to that ruling, arguing that the transactions are either: 1) installment sales agreements giving rise to a purchase money security interest, and therefore are "residential mortgage transactions," or 2) Credit Sales under 1602(h) and are therefore residential "mortgage transactions." (*See* ECF NO. 107 at ii, iv & 3).  Plaintiffs assert that the "pivotal question in this case is whether the Defendants' real estate transactions are 'residential mortgage transactions,' which transactions are governed by the TILA and HOEPA statutes." (ECF No. 107 at 3-4).

Defendants, in their own motion and in response to Plaintiffs' motion, assert that even if the Court determines that the Entity Defendants are "creditors," Plaintiffs must still prove that the underlying transactions constitute transactions that are regulated by the TILA and HOEPA. Defendants assert that "Plaintiffs' claim that the underlying transactions are 'residential mortgage transactions' ('RMT') is inappropriate because they do not actually state a cause of action involving a RMT." (ECF No. 106 at 19).  But Defendants do not go through the operative complaint on a count-by-count basis addressing how and why the claims in the various counts

18

would fail even if the Court ruled that the transactions are "residential mortgage transactions."

In short, Defendants take the position that even if the Court were to find the transactions to be "residential mortgage transactions," that would not get Plaintiffs anywhere because Plaintiffs' case actually involves only cause of action relating to "residential mortgage loans" and "high-cost mortgages." (*Id*. at 20).

Plaintiffs' Reply Brief asserts that Defendants' argument that "this case does not involve residential mortgage transactions" is false, correctly noting that "Plaintiffs' Second Amended Complaint repeatedly refers to residential mortgage transactions. Each Plaintiff's transaction is alleged to be a residential mortgage transaction. *See, e.g.*, Pls.' SAC, ECF NO. 90, ¶¶ 131, 157, 161, 185, 199, 208. Count IV states that, 'the transactions at issue are 'residential mortgage transactions' . . . ¶ 257; 264. Count X seeks a declaratory judgment that the transactions at issue are 'residential mortgage transactions.'" (ECF No. 126 at 1-2).

Plaintiffs assert that "residential mortgage transactions" "fall within TILA and HOEPA." (ECF No. 126). But Plaintiffs do not address or adequately explain how a ruling that the transactions at issue are "residential mortgage transactions" would impact the ten counts asserted in the operative complaint.

Defendants seem to suggest that Plaintiffs would have no actionable claims if the transactions are deemed "residential mortgage transaction" under the Acts. (*See* ECF No. 113 at 5) (Arguing the "only relevancy of the term 'residential mortgage transaction' under the TILA is that 'the right of rescission does not apply to a 'residential mortgage transaction.'"). But Defendants do not offer legal support for that assertion. Rather, they simply direct the Court to *Barnes*, a Ninth Circuit decision that held that there is no statutory right of rescission that applies

to a residential mortgage transaction. *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901 (9th Cir. 2019). Plaintiffs are not seeking rescission in this case and *Barnes* did not explain what claims may proceed, or may not proceed, under the TILA or HOEPA if a transaction meets the definition of a residential mortgage transaction.

Given these shifting arguments and their short-comings, and considering that these "preliminary" cross-motions are brought before the close of discovery, the Court concludes that neither party has established that they are entitled to summary judgment.

**III.    Defendants' Argument Based On Legislative Efforts**

Defendants also argue that rent to own agreements and land contracts are not regulated by the TILA and HOEPA. (*See* ECF No. 106 at 23). In support of that argument, they do not direct the Court to any Sixth Circuit authority on that issue. Rather, they note that there are efforts underway to pass legislation that would expressly govern residential rent to own agreements. (*Id*. at 24, referring to the introduction in the U.S. Senate of the "Residential Rent to Own Protection Act."). Defendants suggest that such efforts would not be necessary if these kind of agreements are already covered under the TILA and HOEPA.

The Court does not find this argument persuasive. Neither side has provided the Court with any binding authority that states whether or not residential rent to own agreements fall within the protections of the TILA or HOEPA. The fact that legislation is being proposed that would specifically address and regulate such transactions does not mean that they are not covered under the existing Acts.

**CONCLUSION & ORDER**

For the reasons set forth above, the Court ORDERS that the pending cross-motions for

summary judgment are DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 10, 2020