UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Natalie James, *et al.*,

      Plaintiffs,

v.                                Case No. 18-13601

Detroit Property Exchange, *et al.*,        Sean F. Cox
                                      United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

    In this action, Plaintiffs assert claims under the federal Truth in Lending Act and Home

Ownership Equity Protection Act, against Defendant Michael Kelly, another individual, thirty-

four different Defendant entities that Kelly owns, and twenty "John Doe" Defendants that have

not been identified.  The matter is currently before the Court on Plaintiffs' Motion for Class

Certification.  The parties have briefed the issues and the Court heard oral argument on July 15,

2021.

    As explained below, the Court shall deny motion because the commonality and typicality

requirements of Fed. R. Civ. P. 23(a) are not met in this case.  In addition, Plaintiffs have also

failed to show that the requirements of Fed. R. Civ. P. 23(b)(2) are met.  The Court declines to

certify a mandatory class under Fed. R. Civ. P. 23(b)(2) under the circumstances presented here,

where this Court has already had an evidentiary hearing during which members of the putative

class testified that they did not wish to participate in this case.  This Court also declines to certify

an "opt-in" class under Fed. R. Civ. P. 23(b)(3) because the predominance and superiority

requirements of the rule are not met.

## BACKGROUND

**A.    Procedural Background**

Acting through counsel, three individuals filed this putative class action as named plaintiffs, asserting claims against five named Defendants, on November 19, 2018.

The action is in federal court based upon federal-question jurisdiction.  This Court declined to exercise supplemental jurisdiction over any state-law claims.  (*See* ECF No. 85).[1]

On March 11, 2019, Plaintiffs filed a motion alleging that Defendants were having improper communications with putative class members and seeking relief from the Court.  (ECF No. 27).  There was extensive briefing, and this Court held an evidentiary hearing over the course of two days, during which some named Plaintiffs and members of the putative class testified.  On July 11, 2019, this Court issued an Opinion and Order (ECF No. 66) wherein it granted Plaintiffs' motion in part.  This Court imposed some restrictions on future communications with the putative class members, ordered that a curative notice be sent to putative class members, and putative class members were given the opportunity to invalidate release agreements they had entered into with Defendants.

Some putative class members chose to invalidate the release agreements they had entered into with Defendants, while others chose not to do so, and this case continued.

On August 10, 2020, this Court issued an Opinion and Order wherein it denied the parties' cross-motions for summary judgment, that were filed before the close of discovery, without prejudice.  (ECF No. 130).

_____

[1]Thereafter, Plaintiffs filed a putative class action lawsuit against Defendants in Wayne County Circuit Court, asserting those state-law claims.  That action is still pending.

On September 8, 2020, this Court issued a "Joint Case Management Report and Scheduling Order" (ECF No. 133) that provides, among other things, that: 1) "[f]act discovery shall be served no later than November 15, 2020" and "Discovery shall be on all issues that are discoverable,"; 2) all motions for class certification shall be filed no later than November 20, 2020; and 3) all dispositive motions shall be filed within 45 days of the Court's ruling on Plaintiffs' Motion for Class Certification.

Plaintiffs' Motion for Class Certification was filed on October 2, 2020.  (ECF No. 137).

At this juncture, the Third Amended Class Action Complaint (ECF No. 146), that added additional named Defendants, is the operative complaint in this case.  It was filed on December 1, 2020, after the Motion for Class Certification was filed.

The Third Amended Class Action Complaint includes the following eight named Plaintiffs: 1) Natalie James; 2) Jerome Day; 3) Carl Austin, 4) Veronica Sherrell; 5) Andre Mack; 6) Eric Ingram; 7) Shanon Cobb; and 8) Jazmine Cobb.

It asserts claims against Defendant Detroit Property Exchange ("DPE"), its owner Michael Kelly ("Kelly"), another individual named Crystian Segura ("Segura"), and the following additional 33 entities: 1) Suena Homes Realty LLC; 2) Homes of Detroit, LLC; 3) Greater Detroit, LLC; 4) American Tax Refund LLC; 5) Montlieu, LC; 6) Detroit Leasing Inc.; 7) Sunrise Homes Realty LLC; 8) Home of Detroit LLC; 9) Clear Sky Realty LLC; 10) Dobel Prize LLC; 11) Midtown Homes Realty LLC; 12) Belmont Properties of Michigan Inc.; 13) Woodlawn Properties Inc.; 14) Detroit MI LLC; 15) Party City LC; 16) Dakota Kids Group; 17) Acre Estate LLC; 18) 13540 Mansfield, LLC; 19) Cherokee Land LC; 20) 9527 Whitcomb, LLC; 21) Chase Loan Services, Inc.; 22) Beba's Buildings, LLC; 23) Chase Detroit, LLC; 24)

3

Good Homes Realty, LLC; 25) Latino Housing, LLC; 26) Alma Almont, LLC; 27) American

Equity Partnership, LLC; 28) The Angel Group, LLC; 29) Devonshire Hills, LC; 30) La Casa

Grande Company; 31) Real TC, LLC; 32) Gerard Brothers, LLC; and  33) Dream Realty

Company.  Thus, there are a total of 36 named Defendants.

Although this litigation has been ongoing since November of 2018, and this is the third

complaint filed by Plaintiffs, and discovery has concluded, this operative complaint also still

includes "John Doe Entities 1-20" that are described as "John Doe Entities that are owned or

controlled by Michael Kelly who have yet to be ascertained."  (Third Am. Compl. at 4).

The Third Amended Class Action Complaint includes the following ten counts, that are

asserted under federal law:

1)    "Violation of the HOEPA (Mandatory Disclosures), 15 U.S.C. § 1639(a), 12 C.F.R. § 1026.32(c) (as to all Entity Defendants)" (Count I);

2)    "Violation of the TILA and HOEPA (Ability to Repay), 15 U.S.C. § 1639(h), 12 C.F.R. § 1026.43(c) (As to all Entity Defendants)" (Count II);

3)    "Violation of the HOEPA (Pre-Loan Counseling), 15 U.S.C. § 1639(u), 12 C.F.R. § 1026.34(a)(5) (As to all Entity Defendants) (Count III);

4)    "Violation of the TILA (Loan Origination", 15 U.S.C. § 1639b (As to Defendant Crystian Segura and Defendant Michael Kelly)" (Count IV);

5)    "Violation of TILA (Loan Origination", 15 U.S.C. § 1639b (As to all Entity Defendants)" (Count V);

6)    "Violation of HOEPA, 15 U.S.C. § 1639(k) (As to all Entity Defendants)" (Count VI);

7)    "Violation of 15 U.S.C. 1639r and 12 CFR § 1026.34(b) (As to all entity Defendants)" (Count VII);

8)    "Violation of 15 U.S.C. § 1639h (as to all Entity Defendants)" (Count VIII);

9)    "Piercing the Corporate Veil (to impose liability upon Michael Kelly for

4

the actions of all Defendants Entities") (Count IX); and

10)     "Declaratory Judgment (As to all Defendants)" (Count X).

Plaintiffs' Third Amended Class Action Complaint asks the Court to certify a class

defined as follows:

> A Class of persons who sought to purchase real property from any of the
> Defendants at any time from November 19, 2015 through final judgment, and
> who have signed:
>
> (a) any document or documents that Defendants characterize as a "Rent to Own"
> transaction, OR
>
> (b) two or more of the following documents drafted by or on behalf of
> Defendants: "lease," "option to purchase," "real estate purchase agreement," OR
>
> (c) a document with the title "Land Contract."

(*Id*. at ¶ 221).

In the Third Amended Complaint, Plaintiffs seek the following relief on behalf of the

named Plaintiffs and the Class:

> WHEREFORE, Plaintiffs and the Class respectfully pray that the Court

grant them the following relief:

> A.     Certify this case as a class action.
>
> B.     Enter a declaratory judgment that the transactions entered
>        into between various Defendant and the Plaintiffs and the
>        Class are residential mortgage transactions within the
>        meaning of 15 U.S.C. § 1602(x).
>
> C.     Enter a declaratory judgment that the foregoing acts,
>        policies, and practices of Defendants violate 15 U.S.C. §§
>        1639, 1639b, 1639c;
>
> D.     Enter a declaratory judgment that the transactions entered
>        into between various Defendants and the Plaintiffs and the
>        Class are land contracts under Michigan law, granting the

Plaintiffs and the Class equitable title in their homes;

E.  Award actual damages to Plaintiffs and the Class in an amount to be determined by the jury that would fully compensate them for their injuries cause by the conduct of Defendants alleged herein;

F.  Award statutory damages to Plaintiffs and the Class in an amount to be determined by the Court in accordance with 15 U.S.C. § 1640(a)(2)(B), and statutory damages in accordance with 15 U.S.C. § 1640(a)(4) and § 1639h;

G.  Award punitive damages to Plaintiffs and the Class in an amount to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

H.  Award Plaintiffs and the Class their reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1640(a)(3); and

I.  Order such other relief as this Court deems just and equitable.

(Third Am. Compl. at 67-68).

**B.    Factual Background**

The Third Amended Class Action Complaint describes the nature of this putative class action as follows:

1.  This action arises out of Defendants' abusive, predatory land contract scheme in Detroit wherein Defendants (1) attract potential purchasers with the possibility of home ownership, (2) have the purchasers sign ambiguous, opaque installment sale contracts with high interest rates that attempt to get around Truth in Lending Act and Homeownership Equity Protection Act provisions, (3) provide the purchasers every indication before and after signing documents that the purchasers are buying a home to encourage them to keep paying the monthly payments and to repair the dilapidated properties, (4) later evict the purchasers as tenants (rather than utilizing the appropriate proceedings provided by law to regain possession from a property to which the purchaser has equitable title as provided by law) based on Defendants' intentional use of ambiguous, confusing,

6

and cherry-picked language when the purchaser almost inevitably gets behind on the payments because Defendants failed to conduct an ability-to-repay analysis, and (5) then restart the process with a new, unsuspecting purchaser.

2.  Defendants have perpetrated this scheme to evade the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. 1639, et seq., by, inter alia, sprinkling language into the installment sale contracts that Defendants believe will make the sales contracts look more like leases, even though thereafter Defendants mail invoices to Plaintiffs and the Class that provide a "loan number", a "maturity date", and break down each payment into principal, interest, and escrow.

3.  These installment sales for transactions for the purchase/sale of real property are residential mortgage transactions within the meaning of 15 U.S.C. § 1602(x), 12 C.F.R. § 1026.32(a)(1), and many are also "high-cost mortgages" within the meaning of 15 U.S.C. § 1602(bb). As such, TILA and HOEPA provisions govern Defendants' conduct and these transactions.

4.  Defendants have violated TILA and HOEPA by, inter alia, failing to provide mandatory disclosures to Plaintiffs and the Class as required by section 1639(a) and (b), failing to determine the Plaintiffs' and the Class's ability to repay the high-cost loans as required by section 1639(h), and failing to ensure that Plaintiffs and the Class obtain pre-loan counseling as required by section 1639(u), failing to provide an appraisal as required by section 1639h, as well as other violations stated herein.

5.  By engaging in the above conduct and by failing to provide disclosures required by law, Defendants have violated the TILA and HOEPA.

(Third Am. Compl. at 4-6).

Plaintiffs' motion explains that each named Plaintiff, and each of the putative class members, entered into written agreements with the Defendant entities. Plaintiffs contend that those "agreements constitute land contracts and/or credit sales under the Truth in Lending Act" and, therefore, Defendants were required to comply with TILA and HOEPA. (Pls.' Br. at 1). Plaintiffs allege that Defendants failed to comply with those statutory obligations in several

respects, including: 1) failing to make required written disclosures to plaintiffs; 2) initiating

transactions with plaintiffs without making a good faith determination of the consumer's ability

to repay; 3) entering into transactions with plaintiffs without receiving written certification that

the consumer obtained pre-loan counseling; 4) charging late fees that are greater than allowed by

statute; and 5) entering into transactions that extended credit to consumers without first having

obtained an appraisal.

Plaintiffs seek, on behalf of themselves and the Class, "monetary damages for violation

of TILA and HOEPA; a declaratory judgment that the transactions at issue are land contracts

under Michigan law, to grant to the Plaintiffs and the Class Members of equitable title in their

homes; injunctive relief, and all other appropriate relief." (Pls.' Br. at 2).

Defendant Kelly is the sole owner of Defendant Detroit Property Exchange. (Kelly Dep.

at 57). Detroit Property Exchange owns all of the named Defendant limited liability companies

in this case. (Kelly Dep. at 223-24). Kelly testified that these other entities conduct their

business through Detroit Property Exchange and he considers it the only operating entity. (*Id*. at

58-61 & 112). Kelly manages and operates all of the entities and is paid by Detroit Property

Exchange to do so. (*Id*. at 78). All of the Defendant entities share one bank account. (*Id*. at

156).

During his January 9, 2020 deposition, Kelly testified that, from 2015 to present, the bulk

of the Defendant entities' business has been rent-to-own transactions. (*Id*. at 68-69). Kelly

testified that since 2015, Detroit Property Exchange and the Defendant entities it operates have

had more than 200, and "maybe close to 300" rent-to-own transactions. (*Id.* at 152).

Plaintiffs' motion asserts that "Members of the Proposed Class, like the Plaintiffs, were

subjected to a common scheme *based on the same or substantially similar form agreements*."

(Pls.' Br. at 2) (emphasis added).  The evidence presented to the Court, however, does not

support that assertion.

When asked, during discovery, if the documents executed by Shanon and Jazmine Cobb

look like Defendant's "average rent-to-own transaction performed by the defendant entities,"

Kelly testified that the agreements the Defendant entities used were not uniform and differed:

> Q.    Okay. And then I'll also, just for the sake of time and clarity, say that
> these are the transaction documents for Mr. Shanon Lee Cobb and Ms.
> Jazmine Jalinda Cobb, who are plaintiffs in this case.  Includes a real
> estate purchase agreement, a lease agreement, and option to purchase
> agreement.
>            Take a minute and just quickly review.
> A.    (Witness reviewing document.)
> Q.    Have you had a chance to review?
> A.    Yes.
> Q.    Okay.  So looking at these documents, does this look like your average
> rent-to-own transaction performed by the defendant entities?
> . . . .
> A.    It looks like one of them.  *Each one of the agreements is different*.  So it
> does look – appear to be a little bit different than some of the other ones
> because –
> Q.    Okay.
> A.    – like I said, *each agreement's a little bit – has a little different twist*.
> . . . .
>
> Q.    How would you describe an average rent-to-own transaction performed by
> the entities you own
> A.    The customer would enter into a lease agreement, and second contract
> would be a – an option to purchase agreement.
> Q.    Okay.  And would those lease agreements look something like, or be
> pretty similar to, the residential lease agreement here that's marked as
> Exhibit 2?
> A.    *No.  They change. We're constantly changing to update, so they would be
> different.*
> Q.    But the – but would the lease – but it would be a lease.  No question about
> it they would sign a lease?
> A.    Correct.
> Q.    Okay.  That would be roughly in this form – numbered paragraphs, state

the property, the term, the payments, the terms of the agreement, who's in charge of maintenance?

A.     Yes.

Q.     And then they would also sign an option agreement that looks substantially similar to the option agreement here in that it says, Hey, you can exercise this option to purchase on these terms, within this period of time, et cetera; correct?

          MR. VIAR: Objection form.  When you say "they," who are you referring to?

BY MR. BUSTER:

Q.     Customers.  You can answer.

A.     *Again, just like the lease agreement has evolved over time, too.  So they're not – so they – there are differences in the language and in terms to the different option purchases.*

          *We don't have one cookie cutter sheet or form that we've used over the years.  We've changed them.*

(Kelly Dep. at 28-29).

Along with Defendants' brief opposing class certification, Kelly submitted an Affidavit

that states, in pertinent part:

2.     Based on the definition of a putative class member from Plaintiff's Motion for Class Certification in this action, I have reviewed the putative class members' agreements.  There are at least seven materially different versions of the agreements within the putative class.  The seven agreements with the largest variations of material terms consist of the following types:

I.     **Lease to Land Contract:** An agreement that starts as a lease and is then converted to a land contract if the putative class member makes four on-time payments.

ii.    **Lease with Option ("LWO") Version A:** An agreement that includes a residential lease and an option to purchase agreement. There is no interest rate or home reserve account ("HRA"), and 35% of rent payments are applied to the option's purchase price each month.  The purpose of the HRA is put a portion of the putative class members' monthly payments aside to pay for City of Detroit property taxes.

iii.   **LWO Version B:** Like (ii), but includes an interest rate and a provision for an HRA.

10

  iv.  **LWO Version C:** Like the other LWO agreements, but a land contract is executed simultaneously with the Lease with Option at the time the agreements are executed.

  v.  **12-Month Contingency LWO:** An agreement that requires twelve on-time payments before having the right to exercise the option.  If the twelve payments are not made on time, the option right is forfeited.

  vi.  **Rent to Own:** An agreement with no interest rate or option to purchase, with taxes paid by the Defendants, and the putative class member receiving a quitclaim deed if the entire lease term is completed.

  vii.  **Rent with Option:** An agreement that includes a residential lease and an option to purchase agreement.  The Defendants are responsible for paying the property taxes.  Also, the agreement's termination provision explicitly states that the putative class member may terminate the agreement at any time, upon 30 days' notice, "<u>without penalty</u>."  After termination, the putative class member is only responsible to pay for the amounts up until the time of the termination.

(Kelly Affidavit, ECF No. 144-3, at 1-3).  Kelly's Affidavit further states:

  3.  These agreements have evolved over time and the different versions have varying material terms, more than just those highlighted above and below.  Some of them are completely unlike any others, and some of them are similar to prior versions, but with changes to certain material contract provisions.

  4.  And, among these various agreements, there are also different provisions within the different categories of agreements.

  5.  Some of the differences in the agreements within a single category are as follows:

   I.  Provision setting a deadline to provide notice of exercising the option to purchase;

   ii.  Provision that the option to purchase will be forfeited if no written notice is provided;

   iii.  Provision explicitly stating the agreement is NOT an installment / land contract;

   iv.  Various provisions indicating the various percentages of monthly rent that are applied to the Option's purchase price;

      v.      Provision requiring the putative class member to secure the lump sum of money that will be owed at the end of the lease term in order to purchase the property under the option provision; and

      vi.     Provision requiring first four payments to be on-time as a condition to exercising the option.

(*Id*. at 3).   Kelly's Affidavit further states:

     7.      For all of the various agreements, Defendants have always allowed the putative class members to negotiate the terms of their agreements.

     8.      In addition to the usual term and price negotiations, the putative class members have negotiated other material terms of their agreements.  Some provisions that have been negotiated and ultimately changed/deleted based on those negotiations include, but are not limited to: (1) the requirement to pay taxes was shifted to the Defendants; (2) the Defendants matched any down payment or option deposit amount; (3) the Defendants agreed to contract without running a credit check; (4) the Defendants would make material improvements to the properties before move-in; and (5) the requirement to pay a transaction fee upon execution of the agreements.

     9.      It was not unusual for the typewritten provisions in the various agreements to be crossed out or changed by hand prior to execution of the agreements.

(*Id*. at 4-5).

Defendants have also provided the Court with an example of each of the various types of transactions documents referenced above.  (*See* ECF Nos. 144-7 through 144-13).

There are eight named Plaintiffs in this case: 1) Natalie James; 2) Jerome Day; 3) Carl Austin, 4) Veronica Sherrell; 5) Andre Mack; 6) Eric Ingram; 7) Shanon Cobb; and 8) Jazmine Cobb.  These eight named Plaintiffs entered into six different transactions with Defendants.

Defendants assert, and Plaintiffs do not dispute, that each of the named Plaintiffs entered into transactions with Defendants that were of the general "LWO Version B" type of transaction. That is, each of the named Plaintiffs entered into transactions with a Defendant entity that included: an agreement that includes a residential lease and an option to purchase agreement,

that includes an interest rate and provision for an HRA.  But even among the named Plaintiffs who entered into the same general transaction type, they executed similar but not identical documents.  (*See* ECF No. 137-5).

For example, in 2016, Natalie James and Jerome Day entered into a transaction with Defendant Homes of Detroit, LLC regarding a property on Three Mile Drive in Detroit, Michigan.  In connection with that transaction, they executed documents titled: 1) "Residential Lease With Option Agreement," 2) "Option to Purchase Agreement," 3) "Real Estate Purchase Agreement," and 4) a "Land Contract Addendum."  (ECF No. 137-5).

The documents executed by the other named Plaintiffs did not include a "Land Contract Addendum" and some named Plaintiffs executed a "Residential Lease with Option Agreement," while others executed a "Residential Lease Agreement."

After Jones and Day entered into their transaction, in 2019, Defendant Homes of Detroit LLC brought a landlord-tenant action in state court (Case No. 19-357241-LT in 36th District Court) seeking to evict James and Day for non-payment of rent.  In connection with that case, the state-court ruled that "plaintiffs and defendants are parties to a land contract as seller and purchasers, respectively, of the subject property, for which a land contract forfeiture action could be filed for breach of the contract by defendants" and the land-lord tenant action was dismissed. (*See* ECF No. 144-18).  Thus, as to James and Day, a state court has already ruled that they are land contract vendees.

The same is true for Veronica Sherrell.  In 2016, Veronica Sherrell entered into a transaction with Defendant Greater Detroit, LLC, regarding a property on Eastwood Street in Detroit, Michigan. Later, in 2019, Defendant Greater Detroit, LLC brought a landlord-tenant

13

action in state court (Case No. 19-3577240-LT in 36th District Court) seeking to evict her for non-payment of rent.  In connection with that case, the state-court ruled that Sherrell "has an equitable ownership interest as a land contract vendee."  (ECF No. 144-20).

The same is also true for Shanon and Jazmine Cobb, who entered into a transaction with Defendant Chase Detroit, LLC, regarding a property on Edinborough Street in Detroit, Michigan.  Some time later, in 2019, Chase Detroit, LLC brought a landlord-tenant action in state court (Case No. 19-347888-LT in 36th District Court) seeking to evict them for non-payment of rent.  In connection with that case, the state-court ruled that Shanon and Jazmine Cobb "have an equitable ownership interest in the property as a land contract vendee."  (ECF No. 144-21).  Thus, a state court has ruled that they are land contract vendees.

Given the nature of the alleged scheme, it appears undisputed that the Defendant entities have filed landlord tenant actions in state court against many others in the putative class.  In defending against those actions, several of Defendant's customers have taken the position that they are land contract vendees.  This Court does not know how many determinations have been made as to those persons, regarding whether or not they have been found to be land contract vendees with respect to the transactions they entered into with Defendants.  Defendants state that while some of their customers have been found to be land contract vendees (such as James/Day, Sherrell, and the Cobbs), the state court has found that others are not, based on the documents they executed. (*See, e.g.*, ECF No. 144-19) (36th District Court finding that Lawrence C. Young[2] is not a land contract vendee).

---

[2]Plaintiffs identify Young as a member of the putative class.  (*See* Ex. 2 to Pls.' Reply Br., ECF No. 158-2)

At the July 15, 2021 hearing, counsel for the parties advised the Court that a few of the named Plaintiffs have paid off their transactions and now own the homes that were the subject of the contracts they entered into with Defendants.  This includes named Plaintiffs James/Day and Sherrell.

Plaintiffs have identified Kolanda Anderson as a member of the putative class.  (*See* Ex. 2 to Pls.' Reply Br., ECF No. 158-2).  Kolanda and James Anderson entered into a transaction with Defendant American Tax Refund LLC in 2019, regarding a property located on Dresden in Detroit, Michigan.  (*Se*e ECF No. 144-13).  They executed a "Residential Lease Agreement," along with an "Option To Purchase Agreement."  (*Id*.).  The Residential Lease Agreement has a term of 52 months but expressly provides that the Andersons may terminate the agreement upon 30 days notice, "without penalty."  (ECF No. 144-13 at PageID.13758).

## ANALYSIS

A district court has "broad discretion to decide whether to certify a class.  *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 457 (6th Cir. 2020).

"A party seeking class certification must demonstrate compliance with Federal Rule of Civil Procedure 23."  *Id.*  "To do so, the putative class must meet Rule 23(a)'s 'four requirements – numerosity, commonality, typicality, and adequate representation.'"  *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). "And the putative class must show that it fits within one of the three subsections of Rule 23(b)." *Hicks, supra*, at 457-58 (citing *Zehentbauer Family Land, LP v. Chesapeake Expl, L.L.C.*, 935 F.3d 496, 502 (6th Cir. 2019))**.**  "A failure on either front dooms the class."  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

15

Plaintiffs, as the party seeking class certification, bear the burden of demonstrating that all prerequisites for class certification have been satisfied. *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996).

## A.      Rule 23(a) Requirements

Under Rule 23(a), the party seeking certification must demonstrate, first, that:  1) "the class is so numerous that joinder of all members is impracticable;" 2) "there are questions of law or fact common to the class;" 3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and 4) "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### 1.      Numerosity

Plaintiffs' opening brief asserts states that the class is "sufficiently numerous as Defendants admit that it consists of approximately 300 people who entered these agreements to purchase homes from Defendants."  (Pls.' Br. at 15).  They contend that there are more than 100 class members and, therefore, the numerosity requirement is met.

In response, Defendants contend the numerosity requirement is not met because "Plaintiffs' proposed class definition is overreaching and makes it impossible to assess numerosity."  (Defs.' Br. at 6). They assert:

> The overreaching class definition contains essentially every person who purportedly signed any contract with Defendants, including commercial interests not subject to the law at issue.  Ex. 15, Semaan Aff. ¶ 10).  It also fails to acknowledge the 3-year statute of limitations.  15 U.S.C. § 1650(e).  And over 100 putative members they include for numerosity signed releases.  Ex 15, Semaan Aff. ¶ 7).  Plaintiffs do not establish numerosity.

(Defs.' Br. at 6).  Semaan's Affidavit states that he is aware of "approximately four" transactions

16

that involved commercial properties, as opposed to residential properties.  (ECF No. 144-16 at PageID.13800).

In their reply, Plaintiffs state that the numbers they stated do not include any agreements signed where the customer is a business entity.  As to Defendants' mention of the three-year statute of limitations, Plaintiffs note their complaint was filed in 2018.  Plaintiff contend there can be doubt that numerosity is met, despite the releases.

The Court agrees with Plaintiffs that numerosity does not appear to be an obstacle to certification here.  Even if there were only 50 class members, that could still satisfy the numerosity requirement.  *See, e.g., USW v. Kelsey-Hayes Co.*, 290 F.R.D. 77, 81 (E.D. Mich. 2013) (Noting that the "modern trend for meeting the numerosity factor is to require at a minimum 'between 21 and 40' class members."); *UAW v. Kelsey-Hayes Co.*, 2015 WL 1906133 at *2 (E.D. Mich. 2015) (finding numerosity met with a class of approximately 100).

### 2.    Commonality

In *Hicks,* the Sixth Circuit explained the commonality requirement set forth in Fed. R. Civ. P. 23(a)(2) as follows:

> To satisfy commonality, Plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541).  "[T]here need be only one common question to certify a class."  *In re Whirlpool Corp.*, 722 F.3d at 853; *see also Dukes*, 564 U.S. at 359, 131 S.Ct. 2541 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question; will do.").

*Hicks*, 965 F.3d at 458.

Here, in support of their argument that commonality is met for purposes of Rule 23(a)(2),

17

Plaintiffs assert that:

> Courts typically find that "commonality" exists where, as here, the Defendant engages in *standardized conduct* toward the Class and uses *form contracts*. *See, e.g., McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (finding claims involving interpretation of form contracts often present a "classic case" for class treatment); *Heartland Comms. Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995) (certifying class of members that signed contracts with virtually identical provision).

(Pls.' Br. at 17) (emphasis added).  Plaintiffs contend that the questions of law and fact common to the Class include:

I.     whether the transactions are land contracts or credit sales and, as such, qualify as residential mortgage transactions as defined by TILA and HOEPA;

ii.    whether Defendants are creditors under TILA and HOEPA;

iii.   whether Defendants failed to make a reasonable and good faith determination that consumers have a reasonable ability to afford the transaction prior to the transaction being consummated;

iv.    whether Defendants failed to provide appraisals to purchasers as required by TILA and HOEPA;

v.     whether Defendants failed to provide APR information to purchasers required by TILA and HOEPA;

vi.    whether Defendants failed to comply with the requirements for residential mortgage original under TILA and HOEPA; and

vii    whether Defendants violated TILA and HOEPA in other ways set forth in the Second Amended Complaint (ECF No. 90).

(Pls.' Br. at 18).

In response, Defendants contend that Plaintiffs cannot show commonality because the answers to the above questions, even as framed by Plaintiffs, all require individualized inquiries. In this regard, they make several persuasive arguments.

First, Defendants argue that several common questions posed by Plaintiffs, as to whether Defendants complied with certain requirements of TILA or HOEPA, require individualized proof because none of those questions "can be addressed before determining if that individual

tenant's contract is covered by TILA and HOEPA – inquiries that must be performed"

"repeatedly for each type of contract and with consideration for one-off negotiations and

representations between Defendant and each putative class member."  (Defs.' Br. at 11).

Defendants stress that their "conduct was not standardized" and they did not use form contracts.

Rather, they contend that there are at least seven different transaction types "with varying

provisions and representations regarding those contracts, with tenant-negotiated idiosyncrasies

and terms in each."  (Defs.' Br. at 10).

Second, Defendants contend that "commonality is destroyed here because of exceptions

to liability that prevent putative class members from recovery, asserting:

> Many putative class members signed commercial leases and or sub-let the
> property, Ex 15, Semaan Aff. ¶ 10, which are excluded from TILA liability.
> These commercial and subleased properties will require individualized analysis.
> *See Selman v. Manor Mortg. Co.*, 551 F.Supp. 345, 348 (E.D. Mich. 1982) (if a
> defendant does "not fall under the definition of 'creditor' for purposes of TILA . .
> . no claim thereunder [may be] stated against them.").

(Defs.' Br. at 12).

Thus, the question of whether a class member's transaction with a Defendant entity is

covered by TILA and HOEPA is not a contention with a truth or falsity can be resolved "in one

stroke."

Defendants also contend that commonality has not been shown here because Plaintiffs

have not proffered a damages model that could be capable of measuring damages on a classwide

basis.  (Defs.' Br. at 12).

Plaintiffs only respond to this argument in the following two-sentence footnote in their

Reply Brief:

> *Comcast v. Behrend* does not support Defendants' point that Plaintiffs must

19

proffer a damages model.  (ECF No. 144, PageID.13482).  In any event, Plaintiffs
are entitled to statutory damages on a class-wide basis, as explained in their
motion.

(Pls.' Reply Br. at 7).

The damages sought by Plaintiffs, however, are not limited to statutory damages.

Plaintiffs' Third Amended Complaint also asks the Court to "[a]ward *actual damages* to

Plaintiffs and the Class in an amount to be determined by the jury that would fully compensate

them for their injuries cause by the conduct of Defendants alleged herein."  (Third Am. Compl.

at 67-68) (emphasis added).  Any awards for actual damages would require individualized

determinations.

And there is Sixth Circuit authority to support Defendants' position that *Comcast v.*

*Behrend* is applied outside of antitrust cases (*see Zehentbauer, supra*, at 510, "We have applied

*Comcast* outside the context of antitrust cases") and that it is appropriate to consider whether an

appropriate damages model exists at the class-certification phase.  *Id*. ("In other words, 'at the

class-certification stage (as at trial), any model supporting a plaintiff's damages case must be

consistent with its liability case.'").

In their Reply Brief, Plaintiffs assert that the varying agreements signed by class

members are all "materially the same – they are installment sales contracts for the purchase of a

home and *not terminable at will without penalty*."  (Pls.' Reply Br. at 1) (emphasis added).  But

that is simply not the case.  The putative class members signed different agreements, with

different material terms.  And contrary to Plaintiffs' assertion, some of them are terminable at

will without penalty.  For example, putative class members Kolanda and James Anderson's

Residential Lease Agreement is for a 52-month term but provides that they may terminate the

agreement "upon the Tenant's 30 day written notice to landlord" and that the "Tenant's decision

to terminate this Agreement is without penalty."  (ECF No. 144-13 at PageID.13758).

Moreover, even if Plaintiffs could establish a common question sufficient to meet Fed. R.

Civ. P. 23(a)(2), as explained below, Plaintiffs cannot show that common questions of fact or

law *predominate* over individualized issues.

### 3.      Typicality

"The premise of typicality is simply stated: as goes the claim of the named plaintiff, so go

the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Typicality is not satisfied when a plaintiff can prove his own claim but not "necessarily have

proved anybody else's claim."  *Id*.

In *Sprague*, the Sixth Circuit found that typicality was lacking where, in pursuing their

own claims, the named plaintiffs could not advance the interests of the entire class.  It explained:

> Each claim, after all, depended on each individual's particular interactions with
> GM – and these, as we have said, varied from person to person.  A named
> plaintiff who proved his own claim would not necessarily have proved anybody
> else's claim.

*Id.*

Here, proof or disproof over a given named Plaintiff's TILA or HOEPA claim will not

necessarily prove or disprove the claims of other class members.  For instance, Plaintiffs contend

that the transactions that they and the named Plaintiffs entered into with Defendants constitute

land contracts and, as a result, Defendants were required to make certain disclosures.  Because

the named Plaintiffs and the putative class members executed different contracts, with different

terms and conditions, under different circumstances, a ruling that one person's transaction

constitutes a land contract does not aid the others.  This is because the determination of whether

21

a transaction constitutes a land contract under Michigan law is based upon the substance of the documents at issue, and other evidence, pertaining to that particular transaction.

Thus, for example, a ruling that named Plaintiff Andre Mack is a land contract vendee as to his transaction with Defendant American Tax Refund LLC, and was therefore entitled to certain disclosures under TILA and HOEPA, will not prove or disprove a claim by any other named Plaintiffs or class members.

In addition, some of the named Plaintiffs and putative class members have already had rulings as to whether their transactions constitute land contracts under Michigan law.  For example, Named Plaintiff Veronica Sherrell was found to be a land contract vendee as to her transaction with Greater Detroit, LLC, while Lawrence Young (who would be in the proposed class) was found not to be a land contract vendee as to his transaction with Defendant Acre Estates, LLC.

Indeed, as to the Named Plaintiffs who have already been found to be land contract vendees as to their transactions with Defendants (i.e., Sherrell, James/Day, and the Cobbs), Defendants correctly note that those persons lack standing to seek a declaration in this action that their transactions constitute land contracts under Michigan law.  As such, they also lack standing to seek such relief on behalf of a class.[3]

The Court concludes that typicality is lacking here and that failure alone warrants denying the request for class certification.

### 3.    Adequate Representation

---

[3]Similarly, the named plaintiffs who have since paid off their land contracts and own the homes that were the subject of their contracts with Defendants lack standing to pursue a declaration in this case that they are equitable owners.

22

In order to certify a class, the Court must find the named class representatives adequate. Fed. R. Civ. P. 23(a)(4).  In addition, if the Court certifies a class it must appoint class counsel. Fed. R. Civ. P. 23(g)(1).  It is therefore appropriate to look at whether the proposed class counsel, and the named Plaintiffs, are adequate.

Here, Defendants do not dispute that Plaintiffs' current counsel can adequately represent the class in this action.  Rather, Defendants challenge only whether the named Plaintiffs can adequately represent the class.  (Defs.' Br. at 15-16).

Under Fed. R. Civ. P. 23(a)(4), the court measures "the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Dry Max Pampers Litig*., 724 F.3d 713, 721 (6th Cir. 2013) (citation omitted).  "The Rule requires that 'the class members have interests that are not antagonistic to one another.'" *Id.*

Here, Defendants suggest that the named plaintiffs may not be adequate class representatives because they only represent one of the seven types of contracts at issue:

> The named Plaintiffs argue, without support, that there are no conflicts of interest. ECF No. 137, PageID.10559.  But the fact that Plaintiffs represent only one of the seven types of contracts at issue here may create a very real possibility of conflict with the putative class members who signed one of the other six types – especially those who signed a contract that is, in whole or in part, a land contract.

(Defs.' Br. at 15-16).

Defendants have a fair point that the Named Plaintiffs only represent one of the seven types of transactions that proposed class members entered into.  And again, at least some the Named Plaintiffs lack standing to seek declaratory relief on behalf of themselves and on behalf

23

of the class.

**B.     Rule 23(b) Requirements**

In addition to fulfilling the Rule 23(a) prerequisites, the proposed class must also meet at least one of three requirements listed in Rule 23(b).  Fed. R. Civ. P. 23.

Here, Plaintiffs contend that they meet the requirements of Fed. R. Civ. P. 23(b)(2) and/or (b)(3).

**1.     Mandatory Class Under Subsection (b)(2)**

Rule 23(b)(2) states that a class may maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Notably, a class certified under subsection (b)(2) is a "mandatory" class action "under which potential class members do not have an automatic right to notice or a right to opt out of the class."  *Reeb v. Ohio Dep't of Rehabilitation and Correction*, 435 F.3d 639, 645 (6th Cir. 2006).  The procedural protections of receiving notice of the class and the opportunity to opt out of it "are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only classes with homogenous interest."  *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).  Conversely, a Rule 23(b)(3) class is "referred to as an 'opt out' class due to the special requirements set forth in Rule 23(c)(2) that all potential members of the class be provided reasonable notice and the opportunity to decline to participate in the action."  *Id*. at 448.

Defendants persuasively argue that a mandatory class under Fed. R. Civ. P. 23(b)(2)

24

would be inappropriate here because it would bind unwilling class members to pursue relief they

do not want.  Defendants note that "[m]any putative class members have signed releases and

wish to remain tenants under the existing contracts."  (Defs.' Br. at 17).  They note that

"Plaintiffs' class definition does not consider the over 100 putative class members who signed

releases and expressed a preference to leave their contacts as negotiated."  (*Id*. at 18).  This

means that "[i]f Plaintiffs' (b)(2) class is certified and receives relief, these peoples' desire to

remain in a lease[4] will be overcome by force."  (*Id*.).

This case is rather unusual in that this Court previously held an evidentiary hearing

during which several individuals who would be members of the putative class testified.  Some of

those individuals testified that they do not wish to join the lawsuit and desire to keep their

existing contracts with Defendants, including releases they signed, in force as written.  (*See* ECF

No. 73 at PageID.3847-60).  In light of this, this Court concludes it would not be appropriate to

certify a mandatory class under subsection (b)(2).

In addition, the relief requested in this action includes an award of "actual damages to

Plaintiffs and the Class in an amount to be determined by the jury that would fully compensate

them for their injuries caused by the conduct of Defendants."  (Third Am. Compl. at 67-68).  It is

not clear whether certification under subsection (b)(2) would be permissible given the requested

monetary damages.  *See, eg., Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254,

279 (6th Cir. 2018) ("In *Dukes,* the Court unanimously held that Rule (b)(2) 'does not authorize

class certification when each class member would be entitled to an individualized award of

---

[4]At the July 15, 2021 hearing, defense counsel stressed that some of the putative class members could lose rental assistance if their transaction is ruled to be a mortgage rather than a lease.

money damages.' 564 U.S. 338, 360-61, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).  Instead, the

Court stated that 'individualized monetary claims belong in Rule 23(b)(3),' noting the due-

process issues raised by binding a (b)(2) class without notice and an opportunity to opt out.").

Accordingly, this Court declines to certify a mandatory class under Fed. R. Civ. P.

23(b)(2).

### 2.    Opt-Out Class Under Subsection (b)(3).

"Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact

common to class members predominate over any questions affecting only individual members,'

and a class action would be 'superior to other available methods for fairly and efficiently

adjudicating the controversy.'" *Wal-Mart Stores, Inc.,* 131 S.Ct at 2549 n.2.

"Rule 23(b)(3) is '[f]ramed for situations in which class-action treatment is not as clearly

called for as it is in Rule 23(b)(1) and (b)(2) situations.'" *Zehentbauer*, 935 F.3d at 503 (quoting

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

District courts therefore have a duty to take a "close look" at whether common questions

predominate over individual ones.  *Zehentbauer, supra*.

Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions

exist, but "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."

*Zehentbaurer, supra*, at 503.  "What matters to class certification . . . is not the raising of

common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to

generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at

350, 131 S.Ct. 1426 (ellipsis and emphasis in original).

Rule 23 provides that the "matters pertinent" to whether questions of law or fact common

to class members predominate over individual issues include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1.      Individualized Issues Predominate

Defendants contend that class certification should be denied because individualized issues predominate here.  The Court agrees.

First and foremost, before there could be any finding as to whether Defendants failed to provide required disclosures under TILA or HOEPA, there would need to be a determination of whether those statutes cover the transactions at issue.  As discussed previously, there would need to be an individualized determination of whether each transaction is a land contract.

Also, as discussed previously, Plaintiffs requested relief includes actual damages and those damages would require individualized damages determinations.

### 2.      Class Members' Interests As To Individual Control

In determining whether a class should be certified under Fed. R. Civ. P. 23(b)(3), this Court should consider "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).

Rule 23(b)(3) actions are well-suited for cases in which small individual recoveries

would not provide plaintiffs with enough incentive to prosecute separate actions. *Amchem Prods., Inc.*, 521 U.S. at 617, 117 S.Ct. 2231. For example, a class member would lack incentive to prosecute an individual action where his or her potential damage award would be $30 or less. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Noting that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or fanatic sues for $30.")

That, however, is not the situation here. While the transactions at issue in this case involve moderately-priced homes, they are still *large dollar-amount transactions*. Each individual plaintiff has a strong enough financial incentive to pursue a declaration that they are land contract vendees, especially in response to a landlord tenant action, if that is an outcome they desire. Members of the putative class have a great interest in individually controlling the prosecution or defense of an action involving a declaration as to whether they are an equitable owner with respect to such a significant transaction.

And, as Defendants note, Plaintiffs counsel have already pursued such relief on an individual basis with respect to several named Plaintiffs. (Defs.' Br. at 25). They also note that they were able to obtain such rulings without significant effort: "In response to eviction proceedings for several putative members, Plaintiffs' counsel moved for summary disposition and obtained rulings that the agreements are land contracts (or leases). *See* Exs 17-20, Dist. Ct. Orders. That is all it took: one motion, oral argument, and a court order." (*Id.*).

Even with respect to claims in this action that involve statutory damages, those damages are not so insignificant that an individual would lack incentive to pursue them on an individual basis. For example, if a Plaintiff's transaction with a Defendant entity is covered by

TILA/HOEPA, and if the Defendant failed to obtain an appraisal prior to the transaction in violation of the statute, damages of at least $2,000 per plaintiff are available for that violation alone.  (*See* Pls.' Third Am. Compl. at 59) (15 U.S.C. § 1639h(e)).

Finally, as Defendants note, a significant number of the individuals in the putative class have already signed releases, which strongly indicates a preference by many in the class to control their own actions.  (Defs.' Br. at 25).  The Court concludes this factor weighs against certification.

### 3.   Other Litigation Weighs Against Certification

The Court should also consider "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).

Defendants contend this factor weighs against certification as "the 36th District Court has already determined in many instances whether a putative class member's particular contract was a lease or a land contract."  (Defs.' Br. at 23).  At this point, this Court does not know how many of the Named Plaintiffs or members of the proposed class have been involved in such litigation. Given Plaintiffs' theory about Defendants' alleged course of conduct, however, it appears that there have been many state court cases involving the members of the proposed class.  And as Defendants' brief notes, there have been rulings going both ways:

> Sometimes the District Court has ruled that the agreements are leases, and sometimes it has ruled that they are land contracts.  *Compare* Ex 17 with Ex 18; *see* Ex 15, Semaan Aff. ¶ 3.  In each case, the court reviewed the varying evidence in the putative class member's file.  *Id*.  ¶ 4.  The fact that rulings in both directions already exist both demonstrates and contributes to the unmanageability of this case as a class action.

(Defs.' Br. at 23-24).  Defendants' brief credibly asserts that "[s]ummary eviction cases will

continue to be filed during this case." (Defs.' Br. at 24 n.12).

This state-court litigation is problematic because any class members who have already had a determination as to whether their transaction is a land contract would lack standing to seek a declaration in this case that their transaction is a land contract. There is a also a real risk that rulings in this case could conflict with rulings in those state-court cases, that are being filed on an ongoing basis. Moreover, because the class definition would include persons who have already had such rulings made regarding their transactions, this would also be a problem in terms of ascertainability of the class, as noted below.

Consideration of this factor weighs against certification.

### 4. Ascertainability

"Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks*, 965 F.3d at 464 (citing *Sandusky Wellness Ctr., LLC v. ASD Speciality Healthcare, Inc*., 863 F.3d 460, 466 (6th Cir. 2017)). "To satisfy this requirement, a 'class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Id*. (citation omitted). As this Court noted in *In re OnStar Contract Litig*., 278 F.R.D. 352, 373 (E.D. Mich. 2011):

> "The existence of an ascertainable class of persons to be represented by the proposed class representative[s] is an implied prerequisite of Federal Rule of Civ Procedure 23." *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (cited with approval in *Romberio v. Unumprovident Corp*., 385 Fed.App'x 423, 431 (6th Cir. 2009)). As such, a class definition should be based on *objective criteria* so that class members may be identified without individualized fact finding. *Id*.; *Crosby v. Social Sec. Admin*., 796 F.2d 576, 580 (1st Cir. 1986); *see also* 7A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 1760 (3d ed.) (The class description must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.")

*Id*. at 373 (emphasis added).  Thus,"[b]efore a court may certify a class pursuant to Rule 23," the

class definition must be "sufficiently definite so that it is administratively feasible for the court

to determine whether a particular individual is a member of the proposed class."  *Young v.*

*Nationwide Mut.Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (internal citations omitted).  That

means that the class definition must be "precise" and "there can be no class action if the

proposed class is 'amorphous' or 'imprecise.'" *Id.*

     In their Third Amended Complaint and in the pending motion, Plaintiffs seek class

certification of the following proposed class:

> A Class of persons who sought to purchase real property from any of the
> Defendants *at any time from November 19, 2015 through final judgment*, and who
> have signed:
>
> > (a) any document or documents *that Defendants characterize as a
> > "Rent to Own" transaction*, OR
> >
> > (b) two or more of the following documents drafted by or on behalf
> > of Defendants: "lease," "option to purchase," "real estate purchase
> > agreement," OR
> >
> > (c) a document with the title "Land Contract."

(*Id*. at ¶ 221) (emphasis added).

     Defendants object to "Plaintiffs' proposed class definition because it is both

unascertainable and includes putative class members who should not be part of any class."

(Defs.' Br. at 6 n.4).  This Court also see problems with the above class definition.

     First, the class would include, in subsection (a), any persons who signed "any document

that *Defendants characterize as* a 'Rent to Own' transaction."  (*Id*.) (emphasis added). What

does that mean?  How would a person receiving notice about such a class action determine if he

or she signed a document that Defendants "characterize as" as a rent-to-own transaction?  How

Case 2:18-cv-13601-SFC-SDD   ECF No. 166, PageID.14529   Filed 08/17/21   Page 32 of 33


would the Court make such a determination?

And subsection (b) talks about three different kinds of documents but, unlike subsection (c) does not define those documents by virtue of the title of the document.  Moreover, subsection (b) would include in the class a person who entered into two different leases with Defendants (for example, for two different properties or subsequent leases for the same property), even though that person did not enter into any "option to purchase" or "real estate purchase agreements."

As Defendants note, that class definition would also include persons who entered into commercial transactions with Defendants, although it appears that such transactions are not subject to the TILA and HOEPA disclosure requirements at issue in this case.

Defendants have also presented evidence to indicate that the class definition would also include persons who are not entitled to TILA protections because they sub-lease the properties to others and therefore are not protected by the statutory provisions at issue.  (*See* Defs.' Br. at 11). Semaan's Affidavit states, in pertinent part, that:

> 10.    Some of the agreements and properties, approximately four, are commercial – not residential – properties.  In addition, I have learned that more than a dozen putative class members are not residing (or have never resided) in the properties but have re-leased them to others.  I suspect that there are more re-lease situations that have not come to my attention.

(Semaan Affidavit, ECF No. 144-16).

This class definition would even include persons who enter into *future* contracts with the Defendants, as it states the time period as from November 19, 2015, until the final judgment is issued in this matter, regardless of what provisions those documents contain and regardless of any disclosures that may be provided by Defendants.

The class definition would also include persons like named Plaintiffs Sherrell and James/Day, who have already had a Michigan court rule that they are land contract vendees with respect to the transactions they entered into with Defendants.  Thus, the class definition includes persons who would lack standing to seek a declaration that their contracts with Defendants constitute land contracts under Michigan law.  And the Court would have no easy way of determining which members of the proposed class have been involved in such litigation, or the status of such cases.

Thus, the Court concludes that Plaintiffs' proposed class does not meet the implied ascertainability requirement of Rule 23(b)(3).

## CONCLUSION & ORDER

Accordingly, for all of these reasons, the Court ORDERS that Plaintiffs' Motion for Class Certification is DENIED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 17, 2021